AO 250  (Rev. 09/20) Pro-Se Motion for Compassion Release



RECEIVED
AUG 22 2023
S.D.N.Y.

UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN___ DISTRICT OF NEW YORK___

UNITED STATES OF AMERICA ,
                Respondent,

v.

MANSSOR ARBABSIAR,

_____

Write your full name here. Petitioner.

**Case No.** 11-cr-897-(JFK)
(write the number of your criminal case)
Honorable Judge Keenan Presiding
**MOTION FOR SENTENCE
REDUCTION UNDER
18 U.S.C. § 3582(c)(1)(A)**
**(Compassionate Release)**
(*Pro Se* Prisoner)

THIS IS ARBABSIAR'S SECOND FIRST STEP ACT MOTION —

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1

addresses the privacy and security concerns resulting from public access to electronic court

files. Under this rule, papers filed with the court should *not* contain: an individual's full social

security number or full birth date; the full name of a person known to be a minor; or a

complete financial account number. A filing may include *only*: the last four digits of a social

security number; the year of an individual's birth; a minor's initials; and the last four digits of

a financial account number.

Does this motion include a request that any documents attached to this motion be filed
under seal? (Documents filed under seal are not available to the public.)

XX Yes

☐ No

If you answered yes, please list the documents in section IV of this form.

SEE HAINES V. KERNER, 404 U.S. 519-2021 (1972)

## I.    SENTENCE INFORMATION

Date of sentencing:   5-30-2013

Term of imprisonment imposed:  300 Months (25-Years)

Approximate time served to date: Approximately 12-Years   (144 Months)

Projected release date:  March 5, 2033

Length of Term of Supervised Release: 36 Months   (3-Years)

Have you filed an appeal in your case?

☒ Yes

☐ No

Are you subject to an order of deportation or an ICE detainer?

☐ Yes

☒ No      But would sign a statement to be returned to IRAN and never
          again set foot on American soil of the United States -

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES①

18 U.S.C. § 3582(c)(1)(A) allows you to file this motion (1) after you have fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on your behalf, or (2) 30 days after the warden of your facility received your request that the warden make a motion on your behalf, whichever is earlier.

Please include copies of any written correspondence to and from the Bureau of Prisons related to your motion, including your written request to the Warden and records of any denial from the Bureau of Prisons.

---

① The requirements for this compassionate release motion being filed with the court differ from the requirements that you would use to submit a compassionate release request to the Bureau of Prisons. This form should only be used for a compassionate release motion made to the court. If you are submitting a compassionate release request to the Bureau of Prisons, please review and follow the Bureau of Prisons program statement.

Have you personally submitted your request for compassionate release to the Warden of the institution where you are incarcerated?

ⅩⅩ Yes, I submitted a request for compassionate release to the warden on ___4-26-2023___.   (See Exhibit 1)

☐ No, I did not submit a request for compassionate release to the warden.

If no, explain why not:

_____

Was your request denied by the Warden?

☐ Yes, my request was denied by the warden on (date): _05-28-2023_

ⅩⅩ No. I did not receive a response yet.   NO RESPONSE AS OF DATE OF MOTION (See Exhibit 1)

## III.   GROUNDS FOR RELEASE

Please use the checkboxes below to state the grounds for your request for compassionate release. Please select all grounds that apply to you. You may attach additional sheets if necessary to further describe the reasons supporting your motion. You may also attach any relevant exhibits. Exhibits may include medical records if your request is based on a medical condition, or a statement from a family member or sponsor.

### A.  Are you 70 years old or older?

☐ Yes.

68 Years Old -

ⅩⅩ No.

If you answered no, go to Section B below. You do not need to fill out Section A.

If you answered yes, you may be eligible for release under 18 U.S.C. § 3582(c)(1)(A)(ii) if you meet two additional criteria. Please answer the following questions so the Court can determine if you are eligible for release under this section of the statute.

Have you served 30 years or more of imprisonment pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which you are imprisoned?

☐ Yes.

☒ No.

Has the Director of the Bureau of Prisons determined that you are not a danger to the safety of any other person or the community?

☐ Yes.

☒ No.

**B. Do you believe there are other extraordinary and compelling reasons for your release?**

☒ Yes.

☐ No.

If you answered "Yes," please check all boxes that apply so the Court can determine whether you are eligible for release under 18 U.S.C. § 3582(c)(1)(A)(i).

☐ I have been diagnosed with a terminal illness.

☐ I have a serious physical or medical condition; a serious functional or cognitive impairment; or deteriorating physical or mental health because of the aging process that substantially diminishes my ability to provide self-care within the environment of a correctional facility, and I am not expected to recover from this condition.

☐ I am 65 years old or older and I am experiencing a serious deterioration in physical or mental health because of the aging process.

☐ The caregiver of my minor child or children has died or become incapacitated and I am the only available caregiver for my child or children.

☐ My spouse or registered partner has become incapacitated and I am the only available caregiver for my spouse or registered partner.

☒ There are other extraordinary and compelling reasons for my release.

Page 4 of 6

Please explain below the basis for your request. If there is additional information regarding any of these issues that you would like the Court to consider but which is confidential, you may include that information on a separate page, attach the page to this motion, and, in section IV below, request that that attachment be sealed.

(See Attached Memorandum With Additional Extraordinary and Compelling Reasons that Support First Step Act Motion For A Reduction Of Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A))

## IV. ATTACHMENTS AND REQUEST TO SEAL

Please list any documents you are attaching to this motion. A proposed release plan is included as an attachment. You are encouraged but not required to complete the proposed release plan. A cover page for the submission of medical records and additional medical information is also included as an attachment to this motion. Again, you are not required to provide medical records and additional medical information. For each document you are attaching to this motion, state whether you request that it be filed under seal because it includes confidential information.

| Document | Attached? | | Request to seal? | |
|---|---|---|---|---|
| Proposed Release Plan | X☒ Yes | ☐ No | x☒ Yes | ☐ No |
| Additional medical information | X☒ Yes | ☐ No | X☒ Yes | ☐ No |
| Memorandum | X☒ Yes Attached | | ☐ Yes | X☒ No |
| Post-Sentencing Rehab | ☒☒Yes (Ex. 2) | | X☒ Yes | ☐ No |
| PROPOSED RELEASE PLAN ☑ YES ATTACHED ☑ YES | | | | |

## V.    REQUEST FOR APPOINTMENT OF COUNSEL

I do not have an attorney and I request an attorney be appointed to help me.

☒ Yes         (See 18 U.S.C. § 3582(c) and 18 U.S.C. § 3006)

□ No

## VI.    MOVANT'S DECLARATION AND SIGNATURE

For the reasons stated in this motion, I move the court for a reduction in sentence
(compassionate release) under 18 U.S.C. § 3582(c)(1)(A). I declare under penalty of
perjury that the facts stated in this motion are true and correct.

June 15, 2023 _____          _____
Date                                   Signature

Manssor Arbabsiar
_____
Name

#56807-054
_____
Bureau of Prisons Register #

FCC-Yazoo City USP Medium
_____
Bureau of Prisons Facility

PO Box 5000        Yazoo City, MS 39194-5000
_____
Institution's Address

 28 U.S.C § 1746

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Respondent, | § | CASE NO. ___11-cr-897 (JFK)___ |
| | § | |
| v. | § | |
| | § | Honorable Judge Presiding |
| MANSSOR ARBABSIAR, | § | Judge Keenan |
| Petitioner. | § | |

MEMORANDUM WITH ADDITIONAL EXTRAORDINARY AND COMPELLING
REASONS TO SUPPORT ATTACHED MOTION FOR A REDUCTION OF SENTENCE
PURSUANT TO THE FIRST STEP ACT AND 18 U.S.C. § 3582(c)(1)(A)

COMES NOW, Petitioner, Manssor Arbabsiar (" Arbabsiar "), acting in pro per (pro se); HEREBY SUBMITS this Memorandum with additional extraordinary and compelling reasons to support the attached First Step Act Motion For a Reduction of Sentence, pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Arbabsiar further prays that this Court does construe his pleasings liberally in light of Haines v. Kerner, 404 U.S. 519, 520-21 (1972)(holding that, "pro se litigants are to be held to a lesser standard of review than lawyers who are formerly trained in the law, and are entitled to a liberal construction of their pleadings."

ARGUMENT

I. ADDITIONAL EXTRAORDINARY AND COMPELLING REASONS -

1. HAD ARBABSIAR BEEN SENTENCED TO DAY, HIS SENTENCE WOULD BE DRAMATICALLY LESS/LOWER -

In a recent ruling in the Supreme Court in Concepcion v. U.S., the Supreme Court held that (1) the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence; (2) because district courts must consider nonfrivolous arguments presented by the parties, the First Step

Act requires district courts to consider intervening changes when parties raise them; and (3) district courts ruling on First Step Act Motions bear the standard obligation to explain their decisions, and accordingly must give a brief statement of reasons to demonstrate that they considered the parties' arguments including arguments pertaining to intervening changes in law or fact.

## I.    CHANGES OF LAW CAN PROVIDE A BASIS FOR 3582(c)(1)(A) SENTENCE REDUCTIONS -

The Sentencing Commission, which Congress in 28 U.S.C. § 994(t) expressly gave the responsibility to "describe what should be considered extraordinary and compelling reasons for sentence reduction," has expressly decided via its new amendments to § 1B1.13 that a "change in the law" legally can and sometimes should be the basis for a § 3582(c)(1)(A) sentencing reduction. Specifically, the following Policy Statement Provision on this issue defines this issue in the new guideline:

"(6) UNUSUALLY LONG SENTENCES - If a defendant received an unusually long sentence and has served at least 10-years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances."

- 2 -

The Sentencing Commission has decided and ruled that a change in law can serve as an extraordinary and compelling reason for sentence reduction, ~~though the Commission limits such a "law-change" reason to cases in which a~~ defendant, like Arbabsiar has already served "at least ten (10) years" of an "unusually long sentence" (like Mr. Arbabsiar month sentence), and the law change "would produce a gross disparity" in sentencing outcomes (where those defendants with the same conduct, same criminal history, today are being sentenced dramatically less/lower than Arbabsiar's 300 month sentence). See Sentencing Commission Data[1]

Though one might well debate the wisdom and reach of how the new guideline seeks to limit when a "change in the law" can provide an extraordinary and compelling reason for sentence reduction, it is beyond debate that the Sent'g Comm'n, the expert agency tasked expressly by Congress to "describe what should be considered" reasons for a § 3582(c)(1)(A) sentence reduction, has now explicitly decided that at least a "change in law" CAN statutorily be a proper basis for a reduction under the statute.

While the proposed amendments to the Guidelines are not effective until they have "lain before Congress" for 180 days (allowing for disapproval by statute), that is, not until November 1, 2023 (see 28 U.S.C. § 994(p)), U.S.S.G. § 1B1.13 is not a "Guideline" for purposes of the amendments. Instead, under 28 U.S.C. § 994(a)(2)(C) and § 994(t), it is a "policy statement." Nothing requires that policy statements be submitted to Congress for potential disapproval. (Compare § 994(a)(1) with id.(a)(2). Therefore, the Commission is free, if it so chooses, to make this change to § 1B1.13 effective immediately.

---

[1] This Court may take notice of the Sent'g Comm'n data "as facts that are not subject to reasonable dispute because [they]...can be accurately and readily determined from sources whose accuracy cannot be reasonably disputed." (quoting Fed. R. Evid. 201(b)(2); Fed. R. App. P. 10(e)(3); see also Fed. R. Evid. 201(d)).

Having now established an extraordinary and compelling reason in the amended Policy Provision under § 1B1.13 by the US Sentencing Commission, Arbabsiar has now established an extraordinary and compelling reason that meets the criteria.  This Court can now review for full consideration in a reduction of Arbabsiar's sentence.

II.    AN EXTRAORDINARY AND COMPELLING REASON SUPPORTS A SENTENCE REDUCTION WHEN THERE IS ALTERNATIVE ENHANCED PUNISHMENTS UNDER SECTION 1958 THAT ARBABSIAR WAS FACING THAT THE COURT FAILED TO CONSIDER NOR FOUND BEYOND A REASONABLE DOUBT TO ENHANCE ARBABSIAR TO A LEVEL 43 - CATEGORY VI -

The Statute of conviction - 18 U.S.C. § 1958 - provides alternative, enhanced punishments.  "(a) Whoever travels in or causes another (including the victim) to travel in interstate or foreign commerce, or uses or causes another (including the intented victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned for not more than ten years, or both; and if personal injury results, shall be fined under this title or imprisoned for not more than twenty years, or both; and if death results, shall be punished by death or life imprisonment, or shall be fined not more than $250,000, or both."  18 U.S.C. § 1958(a)(emphasis added).

There was no death or injury to warrant 1) a sentence of more than ten-years under 18 U.S.C. § 1958; and 2) warrant a base offense level 43 and Criminal History Category VI.  Without death or injury, there was an Apprendi violation because (1) § 1958(a) imposes three distinct penalties; and (2) the alternatives under § 1958(a) are elements for conviction that must be submitted to the jury and found beyond a reasonable doubt. See Mathis v. U.S., 579 U.S. 500, 518 (2016)("If statutory alter-

natives carry different punishments, then under Apprendi they must be elements."); Burrage v. U.S., 571 U.S. 204, 210 (2014)("Because the death results enhancement increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.") Arbabsiar was not facing any death results or injury results and was therefore enhanced to a level 43 and Category VI in error, resulting in an extraordinary and compelling reason (where without any "death results" or "personal injury results" gave Arbabsiar a significantly out-of-line-base-offense-level with similarly situated defendants charged with conspiracy under § 1958.) The need to avoid this unwarranted, substantial sentencing disparity - and further the goals of Congress - constitutes an extraordinary and compelling reason to reduce Arbabsiar's sentence.  18 U.S.C. § 3553(a)(6)(where Congress has instructed courts "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6)).  Arbabsiar faced a maximum sentence of ten-years without "death or injury."  In fact, Arbabsiar was a Criminal History Category I with no prior criminal history scored a guideline range based on the offense of conviction was 121 to 151 months.  Arbabsiar has served both either the ten year maximum or even the high end of 151 months.

        III.  FINALITY OF JUDGMENTS CANNOT TRUMP FUNDAMENTAL FAIRNESS -
        Arbabsiar's case is far from typical, and the vehicle Arbabsiar relies upon for a sentence reduction is a statute whose very purpose is to reopen final judgments.  Cf. Concepcion v. U.S., 142 S.Ct. 2389, 2399 n. 3 (2022)("No one doubts the importance of finality [of criminal judgments].  Here, however, the Court interprets a statute whose very purpose is to reopen final judgments.")  See also U.S. v. Trenkler,

47 F.4th 42 48 (1st Cir. 2022)("Compassionate Release is a narrow exception to the general rule of finality in sentencing.")

IV.   TODAY, ARBABSIAR'S ORIGINAL SENTENCE WOULD RESULT IN AN UNWARRANTED SENTENCING DISPARITY - 18 U.S.C. § 3553(a)(6) -

Congress instructed courts to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty with similar conduct." 18 U.S.C. § 3553(a)(6). With no injury or death in Mr. Arbabsiar's case, Arbabsiar was facing a statutory maximum sentence of ten years. See Sent' Comm'n Data for similar offenses and conduct of defendants being sentenced today.

Furthermore, Arbabsiar was a Criminal History Category I with no prior criminal history, that the guideline range when scored and based on the offense of conviction would amount to the time Arbabsiar has already served, as opposed to being enhanced at his original sentence to a Category VI, Base Offense Level 43 (LIFE). Even if there was not a ten-year statutory maximum, Arbabsiar would be sentenced today at a guideline range that is less than or equivalent to the amount of time Arbabsiar has served in prison (Approximately 12-years).

Arbabsiar's sentence of 25-years is significantly out-of-line with similarly situated defendants charged with Conspiracy under 18 U.S.C. § 1958. The need to avoid this unwarranted, substantial sentencing disparity - and further the goals of Congress - constitutes another extraordinary and compelling reason to reduce Arbabsiar's sentence. 18 U.S.C. § 3553(a)(6)(where because of Arbabsiar's involvement in the conspiracy and alleged facts, Arbabsiar was sentenced as if the jury had convicted him under the "death results" enhancement under § 1958). At Arbabsiar's sentencing the court was not presented with the ten-year maximum (statutory), and counsel for Arbabsiar did not contest any guideline range or enhancement. Having presumed Arbabsiar was facing 25-years using the

- 6 -

the "death results" enhancement and moving Arbabsiar to a Category VI - BOL 43, unwarranted sentencing disparity was never raised as a consideration at sentencing.

It is important to emphasize what the Sentencing Comm'n itself has observed - that only four sentencing guidelines specifically provide for a BOL 43 or life imprisonment sentence. In their words: "Life imprisonment sentences are rare in the federal criminal justice system. Virtually all offenders convicted of a federal crime are released from prison eventually and return to society or, in the case of illegal aliens, are subject to being deported back to their country of origin." see U.S. Sent'g Comm'n "Life Sentences in the Federal System." (Feb. 2015). In fact, only 0.4 percent of federal sentences imposed are life sentences. Id. Enhancing Arbabsiar to a BOL 43 Category VI, places Arbabsiar in an exclusive group that he does not belong with, including the likes of these notorious criminals: Oklahoma City bomber Terry Nichols, Unabomber Ted Kaczynski, 9/11 mastermind Zacarias Moussaoui, Boston Marathon bomber Dzhokhar A. Tsarnaev, and the recently convicted Joaquin "El Chapo" Guzman-Loera. Arbabsiar's sentence is the reason why courts today around the country have stepped in to save many from the clutches of draconian and inhumane extremely harsh sentences (especially where Arbabsiar is a first time offender).

V. THE § 3553(a) FACTORS NOW FAVOR ARBABSIAR -

(1) Nature of Arbabsiar's Offense and Criminal History - 18 U.S.C. § 3553(a)(1) -

Arbabsiar's conduct, while unquestionably subject to penalties under the Indictment Arbabsiar was charged and convicted for, does not stand out from similar cases today that have received substantially lower sentences. See Sent'g Comm'n Data. Congress' clear intent was to allow courts a broader discretion to reduce long harsh sentences, like Arbab-

- 7 -

siar's, because Congress determined that in passing the First Step Act of 2018, **shorter periods** of incarceration sufficiently reflect and account for the dangerous, hgih-caliber nature of the crimes that those statutes now cover.  FSA of 2018, Pub. L. No. 115-391, 132 Stat. 5194.

Further, Arbabsiar's criminal history consists of no prior criminal convictions that placed him at a Category I with zero points.  His prior criminal history of no prior criminal convictions and zero points does not render him an outlier in relation to other criminal defendants charged and convicted for similar offenses.

(2) Need For Sentence To Deter Future Conduct And Protect The
    Public - 18 U.S.C. § 3553(a)(2)(B)-(C) -

The objectives of deterrence  and protection of the public, under § 3553(a)(2)(B)(C), will not be served by Arbabsiar's continued incarceration, for several reasons, including Arbabsiar's post-conviction rehab - ilitation.  See Pepper v. U.S. 562 U.S. 476, 491 (2011)(observing that post-conviction rehabilitation "may be highly relevant" to sentencing factors, especially § 3553(a)(1) and § 3553(a)(2)(B)-(C)).

This court now has the opportunity to see Arbabsiar for the person that he is and has become.  The PreSentence Report only told part of the story.  And the transcripts of Arbabsiar's sentencing hearing was equally slim.  Perhaps this is unsurprising because Arbabsiar faced a 25-year sentence and had no prior criminal history.  Arbabsiar's conduct (as noted in his prior Compassionate Release Motion) is sterling and Arbabsiar has not incurred any convictions during these past 12-years of incarceration. In fact, while most men would be crushed under the weight of a 25-year sentence for their first offense, Arbabsiar was different.  Instead of acting out or approaching prison with a "what is the point" attitude, Arbabsiar started his time in the Federal Bureau of Prisons ("BOP") by

- 8 -

compiling an extraordinary record of rehabilitation. With sterling prison conduct that is almost flawless during these past 12-years of incarceration is in itself extraordinary. But what is most remarkable is the fact that his reform is entirely self-motivated with a committed full-force agenda to make constructive use of his time. Set against the dismal notion that serving a 25-year sentence at his age, he may possibly die in prison, arbabsiar still made the right choices. As the Supreme Court in Pepper v. U.S., explained, "evidence of post-sentencing rehabilitation provides the most up-to-date-picture of [Arbabsiar's] history and characteristics, and is the most accurate indicator of [Arbabsiar's] true tendencies." Pepper, 562 U.S. at 492. Arbabsiar's behavior and rehabilitative efforts, particularly facing a 25-year sentence for his first offense/conviction, is in itself extraordinary. See Arbabsiar's updated Program Review - Exhibit 2.

Arbabsiar has remained close to his family. Arbabsiar's mother, Parvin Shahlai, 88-years old, who resides in his home country in Iran, suffers with heart conditions and high blood pressure. Family circumstances remain an extraordinary and compelling issue, which Arbabsiar's mother does have medical care those family members and friends in Iran help and give to her, but she still needs her son to be there for her. Arbabsiar has had several members in his family that have passed away and moved on to a better place. His niece, father, and uncle all have passed away during his incarceration. Arbabsiar' wife, Martha Guerrero, age 66-years old, although they are separated at this time, still gives her love and support. Arbabsiar also has a son, John, age 34-years old, who has become a successful Vetenarian, with a practice in Austin, Texas, who loves and supports his father. His son and wife both have family passports to visit Arbabsiar in Iran.

As far as Arbabsiar's person ailments and medical conditions, at

- 9 -

the age of 68-years old, includes High Blood Pressure, poor eyesight and losing vision, hearing loss, and prescription consisting of high-blood pressure pills.  Medical Records available upon request.

Arbabsiar's Ambassador and Director from the Embassy of Pakistan in Washington D.C., has attached a letter from the Interests Section of Islamic Republic of Iran (IIS), who provide consular services for the Iranian nationals and expatirates in the United States, is aware of Arbabsiar's intentions of returning to Iran and never to return to the United States, in which, upon granting Arbabsiar a reduction of his sentence to time served and/or a Compassionate Release, the U.S. Attorney's Office may draft or compose a document for Arbabsiar and the Director to sign and confirm/promise and seal that Mr. Arbabsiar and the Director are in agreement for Arbabsiar to never return to the United States.  The Director is ready, upon request to prepare the necessary documents and travel papers for Arbabsiar's return to Iran. See Exhibit 3.

With Arbabsiar's family connection in Iran, during his incarceration, Arbabsiar has been cooperative with the CIA upon their contacting him in regards to obtaining information needed and the status of American citizens in Iran.  Arbabsiar has been helpful with their inquiries and any information possible location, if they were still alive, etc.

Finally, Arbabsiar's age of 68 now decreases any risk of recidivism/reoffending due to his age.  See U.S. Sent'g Comm'n -"The Effects of Aging on Recidivism Among Federal Offenders" 22 (2017).  The sincerety of Arbabsiar's efforts, his commitment to learn and self-improve, are made more manifest by the fact that while undertaking these efforts for the past 12-years, Arbabsiar did so knowing that he will never be allowed or to ever return back to the United States of America.

- 10 -

(3) The Need to Avoid Unwarranted Sentencing Disparities - 18 U.S.C. § 3553(a) -

During Arbabsiar's 12-years of incarceration, Congress has now made it clear that district courts could view offense-and-criminal-history-combinations, like Arbabsiar's, through a more lenient lens, given the unjust nature of earlier sentencing schemes. Arbabsiar has touched upon the disparity of a ten-year maximum sentence versus his 25-year term of imprisonment, showing how grossly disproportionately his sentence handed down by the court. Arbabsiar has also aged and made significant rehabilitative progress and effort these past 12-years. Arbabsiar's sentence is harsh. There can be no credible argument that the sentence already served of 12-years is lenient. Despite receiving a 25-year sentence as a first time offender, his examplary prison conduct and rehabilitative efforts over these past 12-years, demonstrate that a 25-year sentence far exceeds what is sufficient but not greater than necessary to meet the goals of § 3553. (Note: that the COVID-19 crisis has also rendered Arbabsiar's sentence as "overly punitive" based on the fact that the FCC-Yazoo City Medium USP Facility was one of the only Federal Bureau of Prisons that were on a consistent lock-down/ quarantine status from March 20, 2020 up and through to just recently this year in June of 2023. This was all caused by the pandemic, a severe shortage of Staff, inability to follow protocol and procedures for a pandemic outbreak as set by the BOP Program Statement standards, in line with the State of Mississippi and OSHA guidelines, their need for medical staff, and the Facility's Safety Department completely failing its Program Review and Inspections by Washington, D.C. General Counsel. See Exhibit 4 - Memo from Union Rep demanding help for this Facility from State Officials: see also U.S. v. Divine Johnson, 2023 U.S. Dist. LEXIS 72896 (S.D. N.Y. 4/25/2023)(where Johnson's incarceration during the

- 11 -

entirety of the pandemic has rendered his sentence overly punitive for harsh prison conditions [like Arbabsiar], constituting extraordinary and compelling reasons that warrant relief); see also U.S. v. Amerson, 05-cr-0301 (JS)(E.D. NY 2023)(where "a day spent under extreme lockdown and in well - founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison...""particularly for defendants [like Arbabsiar] who have (i) served long sentences, and (ii) been detained for the entirety of the pandemic." Id.) Combine Arbabsiar's 25-year sentence with the harsh three-years of lock-downs/quarantines treatments, together with his examplary prison record and rehabilitative efforts, his agreement to never return back to the United States, Family health issues and circumstances, and his cooperation with the CIA when contacted, in all clearly demonstrate that his 25-year sentence far exceeds what is sufficient but not greater than necessary to meet the goals of § 3553(a). A reduced sentence to time served or compassionate release in Arbabsiar's case would fulfill the mandate of § 3553(a)(where Arbabsiar's sentence is discordant with modern standards of fairness); see generally U.S. v. Rosas, 2020 WL 722 6438, at *4 (S.D. Cal. 12/8/2020)(132-year sentence for six robberies was reduced to time served, below the mandatory minimum, and noting a "growing consensus of district courts" THAT "unduly harsh" sentences constitutes an extraordinary and compelling basis to reduce.)

The sentence Arbabsiar has already served sufficiently "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." See 18 U.S.C. § 3553(a). The following chart (example) shows that Arbasiar is serving a sentence that far exceeds the median's of heinous crimes:

- 12 -

FISCAL YEAR 2020 MEDIAN HEINOUS CRIMES
(U.S. Sentencing Commission Statistical Information Packet)

Murder - 255 Months

Sexual Abuse - 210 Months

Kidnapping - 180 Months

Robbery - 110 Months

EXAMPLES OF HEINOUS CRIMES being GRANTED COMPASSIONATE RELEASE

Rita Bluzman chopped her estranged scientist husband into 65 pieces before dumping his body in the Pearl River in 1996 - see U.S. v. Gluzman, No. 96-cr-323, 2020 WL 4233049, at *8, 10-12 (S.D. N.Y. 7/23/2020); U.S. v. Blanco, No. 93-cr-20042-2 CW, 2020 WL 7350414, at *5 (N.D. Cal. 12/14/2020); U.S. v. Victor Alvarez, 1:93-cr-00181 (PKC) (sentenced to 35 years for seditious conspiracy, bombing conspiracy, attempted bombing conspiracy - released for time served); U.S. v. Todd Labarca, 11-cr-00012 (RMB)(sentenced to 23 years on predicate acts including conspiracy to murder Martin Bosshart, drug trafficking, extortion, assault, - granted time served); U.S. v. Flenory, No. 05-80955, 2020 WL 2124618, at *1 (E.D. Mich. 5/5/2020)(notorious Black Mafia Family sentenced to 30 years and recedved compassionate release); U.S. v. Williams, 2023 U.S. Dist. LEXIS 129978 (S.D. N.Y. 7/27/23) (Conspiracy to use weapons of mass destruction, conspiracy to use anti-air craft missiles, Conspiracy to kill officers and employees of the U.S., sentenced in 2011 to a mandatory minimum term of 25-years imprisonment and received reduced sentences to time served.); U.S. v. Gazi Mezer, 2023 U.S. Dist. LEXIS 2512 (W.D. N.Y. 1/9/2023)(serving a LIFE Sentence for conspiring to and threatening to use a weapon of mass destruction a pipe bombs - vacated his 30-year sentence that was ran consecutive to his LIFE SENTENCE).

There are countless others that have received relief, reductions, compassionate releases.

- 13 -

## VI.  CLOSING

In Koon v. U.S., 518 U.S. 81, 113 (1996), the Supreme Court held that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." This admonishment and duty pertain at sentencing modification hearings as well. Pepper v. U.S., 562 U.S. 476, 490 (2011). Federal judges may conduct inquiries broad in scope, "largely unlimited either as to the kind of information [s]he may consider or the source from which it may  come." U.S. v. Tucker, 404 U.S. 443, 446 (1972). The circumstances of this case are far from common (extraordinary) and are most unusual (extraordinary). Arbabsiar was convicted and sentenced as if he had actually caused injury or death, by an enhancement of "death results" under § 1958 that moved his Criminal History Category of I, with zero points and no prior criminal history, to Criminal History Category VI and a Base Offense Level 43 (or LIFE), resulting in a 25-year sentence.

Based on the foregoing extraordinary and compelling reasons that Arbabsiar has raised, in combination with the § 3553(a) factors, a reduced sentence to time served or Compassionate Release was designed for people like Arbabsiar in mind. Arbabsiar humbly and respectfully requests it. Justice demands it. Keeping Arbabsiar in custody for another 10-years and/or denying Arbabsiar any relief, is not only unnecessary, but contrary to the § 3553(a) factors. Arbabsiar has been incarcerated now for almost 12-years and has clearly established that he is not that person this court convicted years ago, and not a danger or threat to the community or society. WHEREFORE, Arbabsiar moves for

a Compassionate Release or reduced sentence to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), all in the interest of justice and preventing a fundamental miscarriage of justice.

EXECUTED and SIGNED on this 2nd day of August, 2023.

Mannsor Arbabsiar
Petitioner/IN PRO PER
Pro Se/Affiant

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

# UNITED STATES DISTRICT COURT
## FOR THE
SOUTHERN   DISTRICT OF ___NEW YORK___

UNITED STATES OF AMERICA ,

        Respondent,

    Case No. __11-cr-897-(JFK)__
    (write the number of your criminal case)

v.

MANIISOR ARBABSIAR,

Honorable Judge Keenan Presiding

Write your full name here.   Petitioner.

## PROPOSED RELEASE PLAN
### In Support of Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

---

### NOTICE

The public can access electronic court files. Federal Rule of Criminal Procedure 49.1 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

---

If you provide information in this document that you believe should not be publicly available, you may request permission from the court to file the document under seal. If the request is granted, the document will be placed in the electronic court files but will not be available to the public.

Do you request that this document be filed under seal?

    ☒x Yes

    ☐ No

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## PROPOSED RELEASE PLAN

To the extent the following information is available to you, please include the information requested below. This information will assist the U.S. Probation and Pretrial Services Office to prepare for your release if your motion is granted.

### A. Housing and Employment

Provide the full address where you intend to reside if you are released from prison:

TO BE RETURNED TO IRAN AND NEVER TO RETURN TO THE UNITED STATES
EVER AGAIN -

Provide the name and phone number of the property owner or renter of the address where you will reside if you are released from prison:

SEE ABOVE

Provide the names (if under the age of 18, please use their initials only), ages, and relationship to you of any other residents living at the above listed address:

SEE ABOVE

If you have employment secured, provide the name and address of your employer and describe your job duties:

SEE ABOVE

List any additional housing or employment resources available to you:

ATTACHMENT TO MOTION FOR COMPASSIONATE RELEASE

## SIGNATURE

I declare under penalty of perjury that the facts stated in this attachment are true and correct.

| June 15, 2023 | _Mansor Arbabsiar_ |
|---|---|
| Date | Signature |

MANSSOR ARBABSIAR

Name

#65807-054

Bureau of Prisons Register #

FCC-Yazoo City USP Medium

Bureau of Prisons Facility

PO Box 5000

Institution's Address

Yazoo City, MS 39194-5000

 28 U.S.C. § 1746 —

EXHIBIT 1

ADMINISTRATIVE REMEDY EXHAUSTION

TO THE WARDEN

TRULINCS 65807054 - ARBABSIAR, MANSSOR - Unit: YAP-J-A

--------------------------------------------------------------------------------

FROM: 65807054
TO: Re-Entry Affairs Coordinator
SUBJECT: ***Request to Staff*** ARBABSIAR, MANSSOR, Reg# 65807054, YAP-J-A
DATE: 04/26/2023 06:54:58 PM

To: Mr.Colbert
Inmate Work Assignment: facility

Pursuant to the first step act of 2018 and in conjunction with 18 U.S.A 3582(c)(1)(A), I am requesting for a compassionante release. Should you deny my request or fail to respond in 30- days upon receipt of the notice , this will serve as my administrative remedy process and allow me to pursue this matter with my sentencing judge in the u.s district court. I am a key candidate for compassionate release due to the amount of time i have been incarcerated , my post-sentencing rehabilitative efforts ,my conduct in prison, and my age and family support. I appreciate your valued time and careful consideration in this pertinent matter. Should you need any additional information, please feel free to contact me. I look forward to your prompt response. God bless you in all your endeavors. i remain

EXHIBIT L

EXHIBIT 2

POST-SENTENCING REHABILITION EFFORTS



**Individualized Needs Plan - Initial Classification    (Inmate Copy)**    SEQUENCE: 01716245
Dept. of Justice / Federal Bureau of Prisons    Team Date: 08-03-2022
Plan is for inmate: ARBABSIAR, MANSSOR   65807-054

| | | |
|---|---|---|
| Facility: | YAP  YAZOO CITY USP | Proj. Rel. Date: 03-05-2033 |
| Name: | ARBABSIAR, MANSSOR | Proj. Rel. Mthd: GOOD CONDUCT TIME |
| Register No.: | **65807-054** | DNA Status: NYM01656 / 10-11-2011 |
| Age: | 67 | |
| Date of Birth: | 03-15-1955 | |

**Detainers**

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

**Current Work Assignments**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| NO ASSIGNMENT | | | |

**Current Education Information**

| Facl | Assignment | Description | Start |
|---|---|---|---|
| YAP | ESL HAS | ENGLISH PROFICIENT | 07-16-2013 |
| YAP | GED HAS | COMPLETED GED OR HS DIPLOMA | 07-18-2013 |

**Education Courses**

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| YAM | C | PIANO | 09-04-2019 | 10-16-2019 |
| YAM | C | PIANO | 07-05-2019 | 09-04-2019 |
| YAM | C | OIL PAINTING | 03-23-2019 | 05-27-2019 |
| YAM | W | MS OFFICE APP; M-F, 8:00-10:30 | 04-22-2019 | 05-17-2019 |
| YAM | C | YOGA I | 03-25-2019 | 05-13-2019 |
| YAM | C | INFECTIOUS DISEASE | 02-20-2019 | 02-20-2019 |
| YAM | C | INFECTIOUS DISEASE | 02-20-2019 | 02-20-2019 |
| MAR GP | C | CMU DRAWING CLASS | 01-08-2018 | 03-26-2018 |
| MAR GP | C | GREETING CARD CLASS | 04-29-2018 | 06-19-2018 |
| MAR CMU | C | CMU ADV BEADING | 08-21-2017 | 09-25-2017 |
| MAR CMU | C | CARD MAKING CLASS | 08-21-2017 | 09-25-2017 |
| MAR CMU | C | CMU LEGAL RESEARCH ACE | 01-09-2017 | 04-03-2017 |
| MAR CMU | C | ACE CLASS SPANISH 2 | 09-21-2016 | 11-28-2016 |
| MAR CMU | C | ACE CLASS - PUBLIC SPEAKING | 10-05-2016 | 12-19-2016 |
| MAR CMU | C | ACE CLASS - BEGINNING SPANISH | 06-20-2016 | 09-07-2016 |
| MAR CMU | C | CMU OIL PAINTING | 07-18-2016 | 09-20-2016 |
| MAR CMU | C | CMU CROCHET CLASS | 07-18-2016 | 09-20-2016 |
| MAR CMU | C | CMU PAINTING CLASS | 01-12-2016 | 03-29-2016 |
| MAR CMU | C | I UNIT BEADING CLASS | 10-13-2015 | 12-18-2015 |
| MAR CMU | C | CMU PAINTING CLASS | 10-14-2015 | 12-18-2015 |
| MAR CMU | C | HOW TO BUY & SELL A CAR ACE | 10-19-2015 | 12-14-2015 |
| MAR CMU | C | BEYOND BARS #6 | 10-20-2015 | 11-04-2015 |
| MAR CMU | C | BEGINNER STICK ART | 04-14-2015 | 06-25-2015 |
| MAR CMU | C | CMU PAINTING CLASS | 04-14-2015 | 06-25-2015 |
| MAR CMU | C | CMU ANATOMY CLASS | 04-14-2015 | 06-25-2015 |
| MAR CMU | C | BEGINNER STICK ART | 10-13-2014 | 12-24-2014 |
| MAR CMU | C | WATERCOLOR PAINT CLASS | 04-18-2014 | 07-07-2014 |
| MAR CMU | C | CMU ANATOMY CLASS | 04-17-2014 | 07-07-2014 |
| MAR CMU | W | BEGINNER ORIGAMI | 04-15-2014 | 07-07-2014 |
| MAR CMU | C | CMU FITNESS CLASS | 04-14-2014 | 07-07-2014 |
| MAR CMU | C | CMU PAINTING CLASS | 04-16-2014 | 07-07-2014 |
| MAR CMU | C | CARD MAKING CLASS | 04-13-2014 | 07-07-2014 |
| MAR CMU | W | WATERCOLOR PAINT CLASS | 04-09-2014 | 06-25-2014 |
| MAR CMU | W | CMU ANATOMY CLASS | 04-14-2014 | 06-25-2014 |
| MAR CMU | W | CMU PAINTING CLASS | 04-12-2014 | 06-25-2014 |
| MAR CMU | W | BEGINNER ORIGAMI | 04-10-2014 | 06-25-2014 |
| MAR CMU | W | CMU FITNESS CLASS | 04-18-2014 | 06-25-2014 |

Archived as of 09-12-2022       Individualized Needs Plan - Initial Classification   (Inmate Copy)       Page 1 of 4



**Individualized Needs Plan - Initial Classification   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ARBABSIAR, MANSSOR   65807-054

SEQUENCE: 01716245
Team Date: 08-03-2022

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| MAR CMU | W | CARD MAKING CLASS | 04-08-2014 | 06-25-2014 |
| MAR CMU | C | CMU FITNESS CLASS | 01-22-2014 | 03-26-2014 |
| MAR CMU | C | CMU YOGA CLASS | 01-22-2014 | 03-26-2014 |
| MAR CMU | C | CMU CROCHET CLASS | 01-22-2014 | 03-26-2014 |
| MAR CMU | C | CMU DRAWING CLASS | 01-22-2014 | 03-26-2014 |
| MAR CMU | C | CMU PAINTING CLASS | 01-22-2014 | 03-26-2014 |
| MAR CMU | C | NUTRITION | 10-16-2013 | 12-23-2013 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

**Current Care Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 06-19-2013 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-18-2013 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| C19-RCVRD | COVID-19 RECOVERED | 03-21-2022 |
| NO PAPER | NO PAPER MEDICAL RECORD | 04-17-2014 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-31-2013 |
| YES F/S | CLEARED FOR FOOD SERVICE | 12-11-2018 |

**Current Drug Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| ED COMP | DRUG EDUCATION COMPLETE | 06-04-2014 |

**FRP Payment Plan**

| Most Recent Payment Plan |
|--------------------------|

**FRP Assignment:**   **COMPLT**   **FINANC RESP-COMPLETED**   **Start: 03-27-2017**

Inmate Decision:   **AGREED**   **$25.00**   Frequency: **QUARTERLY**
Payments past 6 months:   **$0.00**   Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|-----|------|--------|---------|---------|--------|
| 1 | ASSMT | $300.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**FRP Deposits**

Trust Fund Deposits - Past 6 months:   $ N/A       Payments commensurate ?   N/A

New Payment Plan:   ** No data **

**Current FSA Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 08-07-2022 |
| N-ANGER Y | NEED - ANGER/HOSTILITY YES | 08-07-2022 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 08-07-2022 |
| N-COGNTV N | NEED - COGNITIONS NO | 08-07-2022 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 05-31-2021 |
| N-EDUC N | NEED - EDUCATION NO | 08-07-2022 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 08-07-2022 |
| N-FM/PAR N | NEED - FAMILY/PARENTING NO | 08-07-2022 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 08-07-2022 |
| N-MEDICL N | NEED - MEDICAL NO | 08-07-2022 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 08-07-2022 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 08-07-2022 |

 **Individualized Needs Plan - Initial Classification   (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ARBABSIAR, MANSSOR   65807-054

SEQUENCE: 01716245
Team Date: 08-03-2022

| Assignment | Description | Start |
|---|---|---|
| N-TRAUMA N | NEED - TRAUMA NO | 08-07-2022 |
| N-WORK N | NEED - WORK NO | 08-07-2022 |
| R-MIN | MINIMUM RISK RECIDIVISM LEVEL | 08-07-2022 |

**Progress since last review**

FCC Yazoo City Medium mission changed, and inmate Arbassiar has been moved to the USP.

He has not completed any programs since his last team.

His conduct/behavior is clear.

**Next Program Review Goals**

Enroll in a recreational course by next 6-month team.

Improve cell sanitation daily

Establish a good rapport with new unit team

**Long Term Goals**

Complete the term of supervision successfully.

Maintain good rapport with all staff, and comply with all staff requests based upon BOP policy.

**RRC/HC Placement**

**Comments**

** No notes entered **

## FSA Recidivism Risk Assessment (PATTERN 01.03.00)

Register Number:65807-054, Last Name:ARBABSIAR

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number: 65807-054 | Risk Level Inmate....: R-MIN |
| Inmate Name | General Level......: R-MIN (-9) |
|   Last.........: ARBABSIAR | Violent Level......: R-MIN (5) |
|   First........: MANSSOR | Security Level Inmate: LOW |
|   Middle.......: | Security Level Facl..: MEDIUM |
|   Suffix.......: | Responsible Facility.: YAP |
| Gender.........: MALE | Start Incarceration..: 05/30/2013 |

**PATTERN Worksheet Summary**

| Item | Value | General Score | Violent Score |
|---|---|---|---|
| Current Age | 67 | 0 | 0 |
| Walsh w/Conviction | FALSE | 0 | 0 |
| Violent Offense (PATTERN) | FALSE | 0 | 0 |
| Criminal History Points | 0 | 0 | 0 |
| History of Escapes | 0 | 0 | 0 |
| History of Violence | 5 | 5 | 10 |
| Education Score | HighSchoolDegreeOrGED | -2 | -2 |
| Drug Program Status | NoNeed | -6 | -3 |
| All Incident Reports (120 Months) | 4 | 3 | 3 |
| Serious Incident Reports (120 Months) | 1 | 1 | 1 |
| Time Since Last Incident Report | 21 | 0 | 0 |
| Time Since Last Serious Incident Report | 21 | 0 | 0 |
| FRP Refuse | FALSE | 0 | 0 |
| Programs Completed | 8 | -9 | -3 |
| Work Programs | 1 | -1 | -1 |
| | | Total. -9 | 5 |

Assessment Date: 01/22/2023                    (1)                    Assessment# R-2146875497

## FSA Needs Reassessment

Register Number:65807-054, Last Name:ARBABSIAR

*[handwritten: Risk Level min]*

**U.S. DEPARTMENT OF JUSTICE**                           **FEDERAL BUREAU OF PRISONS**

Register Number: 65807-054                    Responsible Facility: YAP
Inmate Name                                   Assessment Date.....: 01/22/2023
  Last.........: ARBABSIAR    *[handwritten: # Days credited total]*
  First........: MANSSOR       *[handwritten: Recidivism points total]*  *[handwritten: General level: 9]*
  Middle.......:
  Suffix.......:                                                           *[handwritten: Violent level 5]*
Gender.........: MALE

### Needs Reassessment Worksheet Summary

| Need Area | - Before/After - | Assignment - | Description |
|---|---|---|---|
| Anger/Hostility | Before | N-ANGER Y | NEED - ANGER/HOSTILITY YES |
|  | After | N-ANGER Y | NEED - ANGER/HOSTILITY YES |
| Antisocial Peers | Before | N-ANTISO N | NEED - ANTISOCIAL PEERS NO |
|  | After | N-ANTISO N | NEED - ANTISOCIAL PEERS NO |
| Cognitions | Before | N-COGNTV N | NEED - COGNITIONS NO |
|  | After | N-COGNTV N | NEED - COGNITIONS NO |
| Education | Before | N-EDUC N | NEED - EDUCATION NO |
|  | After | N-EDUC N | NEED - EDUCATION NO |
| Family/Parenting | Before | N-FM/PAR N | NEED - FAMILY/PARENTING NO |
|  | After | N-FM/PAR N | NEED - FAMILY/PARENTING NO |
| Finance/Poverty | Before | N-FIN PV Y | NEED - FINANCE/POVERTY YES |
|  | After | N-FIN PV Y | NEED - FINANCE/POVERTY YES |
| Medical | Before | N-MEDICL N | NEED - MEDICAL NO |
|  | After | N-MEDICL N | NEED - MEDICAL NO |
| Mental Health | Before | N-M HLTH N | NEED - MENTAL HEALTH NO |
|  | After | N-M HLTH N | NEED - MENTAL HEALTH NO |
| Recreation/Leisure/Fitness | Before | N-RLF N | NEED - REC/LEISURE/FITNESS NO |
|  | After | N-RLF N | NEED - REC/LEISURE/FITNESS NO |
| Substance Abuse | Before | N-SUB AB Y | NEED - SUBSTANCE ABUSE YES |
|  | After | N-SUB AB Y | NEED - SUBSTANCE ABUSE YES |
| Trauma | Before | N-TRAUMA N | NEED - TRAUMA NO |
|  | After | N-TRAUMA N | NEED - TRAUMA NO |
| Work | Before | N-WORK N | NEED - WORK NO |
|  | After | N-WORK N | NEED - WORK NO |

### Needs Reassessment Worksheet Details

Need Area: Anger/Hostility, Assignment: N-ANGER Y                    *[handwritten: 40]*
  No Data
--------------------------------------------------------------------------------
Need Area: Antisocial Peers, Assignment: N-ANTISO N
  No Data
--------------------------------------------------------------------------------
Need Area: Cognitions, Assignment: N-COGNTV N
  No Data

**FSA Needs Reassessment**

Register Number:65807-054, Last Name:ARBABSIAR

U.S. DEPARTMENT OF JUSTICE                    FEDERAL BUREAU OF PRISONS

Need Area: Education, Assignment: N-EDUC N

   Category - Assignment - Start           - Stop
   EDI       GED HAS       07/18/2013 12:32
--------------------------------------------------------------------------------
Need Area: Family/Parenting, Assignment: N-FM/PAR N

   Source: PPG6, Tag: familyCommunityTies, Value: 4
--------------------------------------------------------------------------------
Need Area: Finance/Poverty, Assignment: N-FIN PV Y

   No Data
--------------------------------------------------------------------------------
Need Area: Medical, Assignment: N-MEDICL N

   Category - Assignment - Start           - Stop
   CAR       CARE1         06/19/2013 14:03
--------------------------------------------------------------------------------
Need Area: Mental Health, Assignment: N-M HLTH N

   No Data
--------------------------------------------------------------------------------
Need Area: Recreation/Leisure/Fitness, Assignment: N-RLF N

   No Data
--------------------------------------------------------------------------------
Need Area: Substance Abuse, Assignment: N-SUB AB Y

   No Data
--------------------------------------------------------------------------------
Need Area: Trauma, Assignment: N-TRAUMA N

   No Data
--------------------------------------------------------------------------------
Need Area: Work, Assignment: N-WORK N

   No Data

# Attachment 3

REFERENCE

LETTERS



دفتر حفاظت منافع جمهوری اسلامی ایران ـ واشنگتن

*EMBASSY OF PAKISTAN*

**INTERESTS SECTION OF THE ISLAMIC REPUBLIC OF IRAN**

1250 23rd Street. NW  Suite #200 · Washington, DC 20037
Tel: (202) 965.4990  Fax: (202) 965.1073   www.daftar.org

March 27, 2023

Re:    Manssor Arbabsiar
       BOP #: 65807-054
       FCC-Yazoo City Medium USP
       Yazoo City, MO 39194

To Whom It May Concern:

Mr. Manssor Arbabsiar contacted our office and inquired about whether our office would issue an Iranian passport or travel papers so he can return to Iran upon his release from the United States custody.

Our office, the Embassy of Pakistan, Interests Section of Islamic Republic of Iran (IIS) is the only office in the United States that provides consular services to the Iranian nationals and expatriates in the United States and as such it is expected to provide aids to the Iranian nationals in the United States under the 1963 Vienna Conventional for consular services.

Since Mr. Arbabsiar is an Iranian national, upon his request, our office will issue the necessary travel papers to Mr. Arbabsiar so he can return to Iran.

Please let us know if we can be of any help in returning Mr. Arbabsiar to his family in Iran.

Sincerely,

/s/

Mehdi Atefat

Director



**U. S. Department of Justice**
**Federal Prison Industries**
**UNICOR (YZII)**
Federal Correctional Complex
P. O. Box 5666
Yazoo City, Mississippi 39194

# MEMORANDUM

Date:       August 31, 2020

FROM:     R. Hampton, UNICOR Quality Assurance Manager
          B. Gunn, Factory Manager

TO:         Unit Team

SUBJECT:  Work Programs for Inmates FPI

---

In conjunction with the Purpose and scope of FBOP Program Statement 8120.03; Federal Prison Industries, Inc. was established as a program to provide meaningful work for inmates. This work is designed to allow inmates the opportunity to acquire the knowledge, skills, and work which will be useful when released from the institution.

The ISO 9001:2015 is a 60 hour FPI certified Quality training program developed to ensure its graduates meet the requirements, and can effectively implement and maintain the Quality Management system. All internal quality auditors will complete the training criteria stated on the internal quality training record. Auditors will be tested using the Internal Quality Auditing Exam f-9200-7; A PASS/FAIL Rating of 90% on the exam in required for completion of the internal quality auditing training course. A record of each internal auditor will be documented on Internal Audit Training Record f-9200-9. All records are to be maintained in accordance with P-7530, Control of Documented Information.

It is FPI policy to established approved apprenticeship programs in the areas of industrial operations that have the potential to meet the requirements of the:

- Bureau of Apprenticeship Training (BAT) of the U.S. Department of Labor.
- Department of Education of the state in which the training is located.
- Training Representative of the appropriate labor union.

Refer to the Program Statement **Occupational Education Programs** for further information.

B. Gunn, Factory Manager



# United States Government
# M e m o r a n d u m

Federal Prison Industries
Post Office Box 5000
Yazoo City, MS 39194

TO:        To Whom It May Concern

FROM:      B. Gunn / Factory Manager

DATE:      March 18, 2021

SUBJECT:   **Letter of Recommendation from B. Gunn For Arbabsiar, Manssor #65807-054**

UNICOR inmates learn real-world job skills and gain work experience in such areas as clothing and textile, electronics, and vehicle reconditioning that will help them find jobs after they are release.  At UNICOR, we pride ourselves in providing the rehabilitative opportunity to instill values of hard-work, honesty, integrity, group participation, goal setting, problem solving and much more qualities which benefit inmates as they transition back into society. As the current Factory Manager in FCC Yazoo City Medium in Mississippi where inmate Arbabsiar, Manssor # 65807-054 currently is employed as an ACU Operator in the ACU - OCP Trouser Department, I state the forgoing.

Our records reveal inmate Arbabsiar, Manssor has been employed by UNICOR since November 2018 thru current date.  His employment trajectory is reflective of the motivation to rehabilitate and improve to incorporate back into society. During this time period inmate Arbabsiar has been observed demonstrating the following: respectful communications with UNICOR staff members, arrives on time for work, shows initiative to effectively complete his daily operations as ACU - Operator in the ACU OCP Trouser Department, which directly affects the factory output flow for production, and he communicates well in training inmates.  We have had no incidents with him and appreciate his skills as an ACU Operator in the ACU - OCP Trouser Department
It is my observation of inmate Arbabsiar's character, while in UNICOR, which is memorialized in this reference letter for the benefit of presenting Unit Team with documentation and any Post-Sentencing Rehabilitation efforts towards any Compassionate Release.  Research demonstrates that inmates who work in prison industries were _24 percent_ less likely to recidivate that non-program participants, and _14 percent_ more likely to be gainfully employed.

1

Honorable John F. Keenan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Dear Judge Keenan,

I am Martha E. Guerrero, wife of Manssor Arbabsiar. We have been married for almost twenty five years and have one son together, Johnn. My husband joined my family when I had already four children at a young age and has always been respectful to all. I work as a case manager for the WorkForce in Austin, TX, helping families for the last ten years. I have earned my Bachelor's Degree in Health and Human Services Management, almost succeeding in obtaining my Master's degree. Because of the encouragement of my husband Manssor Arbabsiar I have been able to educate myself. His belief of education has given me and my children the encouragement to seek an education for a better living.

Throughout the years I have experienced how much Manssor enjoyed helping others. Manssor has always been a trusting and helpful person to everyone. I always kept saying to him he had a heart of gold and needed to take care of it before someone would steal it. He was always ready to help his friends and family. He was the one that helped my sister Vicky to buy her diabetic meter and other materials when she was diagnosed because she did not have insurance or Medicaid. Every family gathering Manssor would be the one making everyone laugh and enjoy their time. When my father passed away he did not think twice and took me to Wisconsin where my parents lived so I could be with my mother that was devastated. My mother loved Manssor so much rest her soul that she would always asked wher he was coming to see her.

One time stands out in my life, when my brother Roger was in a situation when he would lose everything he worked for his life. My brother had started a car business and was having trouble when he asked Manssor for his advice since he was in the same business. My brother is a mechanic for a living and did not know much about buying or selling cars. Manssor decided that family takes care of family and he helped him with buying the right merchandise and selling. He also was an emotional support for my brother that helped him succeed in his business. This and other selfless actions made me proud to have him in my life.

Of course Manssor had flaws. For a long time I closed my eyes to a possible mental problem. Over the years, I noticed that he had drastic changes in modes. When we worked together when he first opened the car dealership, it was a daily task to ensure he would give me the titles for cars because he often lost them as well as car keys. I attributed this forgetfulness to his busy work style. Daily his frustration with small things was very obvious but he never did anything about it. He was always a chain cigarette smoker to the point that he would be smoking

02/27/2013  20:24    5124917563              WORKFORCE SOLUTIONS                    PAGE  03/05

2

while eating. He couldn't focus. One time when he had a cold and we went to the Doctor I asked for a hearing test for him. The Doctor did not find anything wrong in his hearing but did mention that he would not focus when he was asking him questions. We did not think anything of it and went on with our lives.

He would call his son or me every five minutes just to ask what was going on or how we were doing. At that time I appreciated the constant attention, but the conversations were repetitive. It got to the point where he would take my phone to call Johnny because he would not answer his calls since he had been calling him several times just to remind him to study hard and how much he loved him. This happened so often that eventually I would not let him use my phone. Needless to say it was irritating for us to have him call Johnny at school or me at work in that manner but we loved him and did not say anything.

There were times when he sank into deep depression. After our son was born we did have many arguments because he would just stay in the bedroom sleeping or smoking and passing for hours. I was hurt but after a period of times understood that he was depressed. When his best friend died in a car crash and his father died too, he did the same thing but it was worse. He spent a whole week in the bedroom smoking, sleeping and did not talk to anyone not even his friends which it as very strange because they kept in contact daily. Thereafter he seemed a bit better but did not want to talk about anything. I could tell that he was depressed and tried to distract him with no luck. I felt that if he would go home to visit his mother and family he would be able to mourn properly and feel better.

Even with this problem, Manssor has always been involved in his family's well being and working hard to create a better future for all of us. What I always admired and appreciated for Manssor is the respect and care he had towards my other children. He helped my sons and daughter with anything they may need being financial or just as an emotional support. To this date all of my children are living their own lives and they continue to have great respect for Manssor as well as always remember the times when he would make everyone laugh. Of course Manssor loves his son Johnny so much. He gave him the same advice that he gave to my children. Johnn has made a few mistakes, but Manssor was by our son's goods and bads advising him the importance of believing in one self and how much he loved him. One phrase I will always remember is what he told Johnn, "Take care of yourself so you can take care of your loved ones and stay away from trouble." Because of this moral and emotional support our son Johnn is now a Junior at Texas A&M close to obtaining Biomedical Degree.

When Manssor learned of becoming a grandfather it was the second happiest time in his life. He had so many plans to meet his grandson and to spend more time with Johnn, Ashley, and me, but unfortunately he had to go back to his country to make sure his mother was alright. We both had agreed it was important for him to go back to his country and spend some time with his mother in order to grieve.

I understand it is hard to know a person when in your position, Judge, but I like for you to know the real Manssor; he can make you laugh when you are around him; he cannot say no to anyone that asks him for help; he loves his family; he loves to work; he loves to cook for the

02/27/2013  20:24    5124917563           WORKFORCE SOLUTIONS              PAGE  04/05

3

family every time he has a chance. He has been a great father and I know that he will be a great grandfather. I love my husband but I am also aware of his imperfections and his deep remorse for his actions. He continues to surprise me with the extent of his love for his son, grandson and my family. I hope that this brief letter helps you to know the real Marissor.

Thank you kindly,

Martha E. Guerrero

# Attachment 4

YAZOO CITY

FCC-USP MEDIUM

STAFF/ COVID-19

ISSUES

## American Federation of Government Employees
### Council of Prison Locals C-33
### Local 1013



**Cyndee L. Price, President**
P. O. Box 413
Yazoo City, Mississippi 39219
(662) 751-4800 ext. 4540
662-528-3311 Cell
(662) 751-4989 Fax



September 22, 2020

TO:  HONORABLE BENNIE THOMPSON, CONGRESSMAN

Beginning September 1, 2020 FCC Yazoo City changed the mission of the United States Penitentiary (USP) to a Low security level institution. In August of 2020, the Agency advised they would be implementing these new changes. Management stated to Local Union No. 1013, after September 1, 2020, the USP will be a Care Level II and In-Transit Holdover facility.  The procedures they planned on implementing would be as follows:

- Beginning September 1, 2020, approximately four-hundred (400) inmates would be sent to the facility
- The Marianna, Florida inmates already housed at USP FCC Yazoo City would be sent back to their institution beginning October 1, 2020.
- Buses will be arriving daily to meet the USP component of Inmate Intake
- Inmates will be placed in uninhabited units and quarantined for fourteen (14) days

FCC Yazoo City is short one-hundred thirty-four staff throughout the Complex. FCC Yazoo City has now opened up eleven (11) of the housing units out of the twelve (12) available. Prior to September 1, 2020, there were no more than four (4) housing units open regularly. This was due to the staffing shortage we currently are facing. It is highly unfeasible for the Agency to take on more inmates when the staffing level has not been increased. This increases the inherent workload and changes the working conditions of the staff here at FCC Yazoo City. We do not have the staffing compliment to fulfill the needs of this institution, without causing undo stressors onto the staff. Our staff are tired, working sixteen (16) hours or more daily, seven days a week. Some have not seen their families days in a row due to the increase in work. Staff that work in other departments (non-custody) outside of being an officer(i.e teachers, secretaries, accountants, etc), are being removed from their hired positions and placed in officer (custody) positions. They are being utilized to work two different job assignments, while being only paid in one capacity. In addition these non-custody staff are still required to fulfill their job assignments and are being disciplined for not completing their jobs and/or not wanting to be reassigned to a custody position continuously. The Agency has called this Augmentation and there is no policy within the Bureau of Prisons where this is lawful.

*The Appropriations Act of 2019, stated, "Although, the Federal Inmate population continues to decline from its 2013 high, overcrowding remains a serious threat to correctional officer safety, particularly at high- and medium-security facilities. The Committee repeats its direction to BOP to end its overreliance on augmentation; hire more full-time correctional officers to eliminate the need*

to augment them with non-custody employees; and improve staffing beyond mission critical levels in custody and all other departments. BOP shall continue to submit quarterly reports on inmate-to-officer ratios, including confirmation that at least two correctional officers are on duty for each shift at BOP facilities that house high security inmates, as specified in the fiscal year 2019 Appropriations Act."

Additionally, the inmates that have arrived to USP Yazoo City, from other agencies, have tested positive for COVID-19. From the onset of the Pandemic, FCC Yazoo City was at forty (40) percent affected with the Coronavirus. Miraculously, we were able to reduce that percentage to zero (0) until recently. By allowing these inmates to come into our facilities with this deadly virus, it not only puts the inmate population at risk, but staff as well. With that being a concern, it increases the chances of the staff taking the Coronavirus back into their communities and their families. That is a risk that we are being forced to take due to the Agency's negligence to ensure our safety. Our Collective Bargaining Agreement's (CBA), which is still in effect, language is clear in its respects of Article 27 Section a. wherein it states, "There are essentially two (2) distinct areas of concern regarding the safety and health of employees in the Federal Bureau of Prisons: 1. the first, which affects the safety and well-being of employees, involves the inherent hazards of a correctional environment; and 2. the second, which affects the safety and health of employees, involves the inherent hazards associated with the normal industrial operations found throughout the Federal Bureau of Prisons."

We do not have enough medical staff to meet the need of the Agency's change in the security level for the USP. In order to be a Care Level II facility, FCC Yazoo City will need ensure there are enough Medical Staff available to house sickly inmates, who need around the clock care. The Medical Department is short of staff as well and is already behind for the duties that need to be filled COVID-19.

FCC Yazoo City has no contingency plan for COVID-19. Our Safety Department just failed the Corona Virus Response Team's unannounced visit from Washington D.C. This team comprised of Regional Medical Professionals who came to review the procedures at FCC Yazoo City implemented to ensure we were following proper protocol in decreasing the spread of the Coronavirus. Our Safety Department is not equipped to contain and minimize the spread within the facility. It is surely not equipped to decrease the potential spread from hundreds of individuals who are coming from across the country into our facilities.

The Union is humbly requesting that you intervene on the staff's behalf on Capitol Hill. We are in dire restraints and welcome any relief you may be able to provide.

Humbly and Respectfully,

Cyndee L. Price, Union President, Local 1013

2/5/2021 1:04

Documents Foreshadow a Grim Future for COVID-19 Spread in Federal Prisons
A general view of the Federal Correctional Complex in Victorville, California
What happens when federal prison staff speak out on the dangers ravaging their facility during COVID-19? Almost nothing, it seems.
Syeda Malliha , Legal Intern, Criminal Law Reform Project
Kadeisha Weise , Legal Administrative Assistant
Share This Page
Copy Link to Clipboard
August 10, 2021
Last fall, we sued the Federal Bureau of Prisons and other federal agencies demanding the release of critical information about their failed response to COVID-19 in federal jails and prisons.. After a year of stonewalling, the documents slowly trickling in are frightening: desperate pleas from on-the-ground staff to their supervisors about incarcerated people and staff dying. In one instance, after months of radio silence from supervisors, an employee at the Yazoo City federal prison in Mississippi wrote:

Screenshot of BOP email reads: "My concerns have not been resolved. We are critically understaffed. We are breaking policy to complete our mission. A case could be made that we are violating the constitutional rights of our inmate population. I have notified the Director because I believe the situation warrants his involvement
Let that sink in. This is a federal government employee implying that the federal government is breaking the law. Instead of helping incarcerated people (or on-the-ground staff), BOP dodged responsibility and protected leadership, as seen in their response to the whistleblower:

Screenshot of BOP email reads: "I will tell you that you need not copy the Director, as he has far more concerns than local issues at Yazoo City. You need to work with your exec staff to fix any issues you believe you have. Show some respect for his position."
The whistleblowing employee made clear that this wasn't his first time asking for help:

Screenshot of BOP email reads: "This is to date the 7th memo I have sent to you regard

(WHISTLEBLOWER)

Case 1:11-cr-00897-LGS   Document 91   Filed 08/22/23   Page 45 of 45

Manssor ARBABSIAR #65807-054
FCC - YAZOO CITY USP MEDIUM
P.O. BOX 5000
YAZOO CITY, MS 39194



to →



RECEIVED

AUG 2 1 2023

CLERK'S OFFICE
S.D.N.Y.

clerk's office
U.S District count
southern District of
500 pearl street
New York, NY 1c

Crim Doc
B.C